# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Chapter 11 |
| G.P. WEST, INC., | Case No. 11-04954 (ESL) |
| Debtor | |

## EMERGENCY MOTION FOR ENTRY OF ORDER PROHIBITING THE USE OF CPG/GS PR NPL LLC' CASH COLLATERAL AND FOR ADEQUATE PROTECTION, AND FOR EMERGENCY HEARING THEREON

**TO THE HONORABLE COURT:**

COMES NOW **CPG/GS PR NPL LLC** ("CPG/GS"), as purchaser and successor in interest of certain assets of First Bank Puerto Rico[1] ("FBPR") including, among others, credit facilities pursuant to the loans of over $127 Million (the "Loans") made by FBPR to debtor G.P. West Inc. ("Debtor") or Debtor's related parties and guaranteed by Debtor, by and through its undersigned counsel, and respectfully submits this Emergency Motion for Entry of Order Prohibiting the Use of CPG/GS' Cash Collateral.

### Preliminary Statement

For the reasons stated below, CPG/GS requests that this Honorable Court prohibit the Debtor's use of CPG/GS' cash collateral ("Cash Collateral"). Debtor currently generates cash from rents generated by real estate: a parcel of land leased to Supermercados Maximo Inc., for retail grocery store parking; and residential apartments ## 1702N, 1802N, 1902N, 2002N,

---

[1] On February 16, 2011, CPG/GS acquired the Loans and all rights under the applicable loan documents from FBPR. This acquisition was notified to the Debtors and its guarantors. The Loans and other features of the credit facilities are described in extensive detail in the Verified Complaint in Civil No. KAC 2011-0502 (808), Puerto Rico Court of First Instance, San Juan Section, filed May 26, 2011 and currently stayed. Copy of said Verified Complaint is filed as Exhibit I hereto; the exhibits to the same Verified Complaint are filed in a related bankruptcy case in this Court, No. 11-4414 (ESL), Docket No. 10 therein (and will be filed in this case also, to complete the record).

2102N, 1705N, 1905N, 1903. See Schedules A, G, Dkt. No. 1. CPG/GS's pre-petition lien on said rents extends to both pre-petition and post-petition rents pursuant to 11 USC §552(b). Cash may also possibly be generated by the Debtor from the sale of the aforementioned condominium units, which are mortgaged to secure the Debtor's payment obligations to CPG/GS; and, potentially, other sources. The aforesaid post-petition rents, sale (if any) proceeds, and cash from other sources is collectively CGP/GS' cash collateral (herein, the "Cash Collateral"). Counsel for CPG/GS asked for an interim stipulation to assure the segregation of cash collateral pending the negotiation of a stipulation covering the near-term use of cash collateral, but to no avail (see Exhibit A hereto, and interim stipulation tendered therewith). Thus, Debtor has provided no assurances that it will not use the Cash Collateral without an agreement to do so. This has left CPG/GS without adequate protection, which it has demanded under Dkt. No. 6 of this case, and continues to demand now. CPG/GS should not be forced to bear the risk of erosion of its Cash Collateral, and the burden of the continued diminution in the value of its collateral generally, without Debtor providing adequate protection.

**I.     Background**

1.      Generally, the Loans were provided for the development, construction, and operation of three distinct real estate projects to Debtor's related entities, and a land loan to Debtor itself. The first, commonly referred to as the Double Tree Hotel, is a hotel located in Condado, Puerto Rico. The second, commonly referred to as Gallery Plaza, is a mixed residential and commercial real estate complex, also located at Condado Puerto Rico. The third, commonly referred to as Atlantis, is a residential real estate complex located in the vicinity of Old San Juan, Puerto Rico. The fourth is a loan for the acquisition of Debtor's land lots in Condado, San Juan, Puerto Rico

2.      The Loans and other features of the credit facilities are described in extensive detail in the Verified Complaint in Civil No. KAC 2011-0502 (808), Puerto Rico Court of First

Instance, San Juan Section, filed May 26, 2011, true copy of which is attached as Exhibit I hereto and incorporated by reference as if fully recited herein.

3. The Loans are secured by (among other things) virtually all of the Debtor's assets, as more particularly detailed in the Verified Complaint, and among which CPG/GS emphasizes the liens described in the following paragraphs.

4. All of the maturity dates for the Loans (except one of the obligations under the Double Tree Credit Agreement, as defined in the Verified Complaint) expired approximately one year before the date of filing the Debtor's bankruptcy petition ("Petition Date") and there has been no dispute that the borrowers and their guarantors defaulted on repaying, among others, the loan under the GP West Loan Agreement which matured on January 1, 2010, with principal balance in excess of $8 Million and interest accrued thereon to the petition date in excess of $500,000.[2] CPG/GS has a first priority perfected lien in the Collateral (described and defined in the Verified Complaint).

5. Prior to the Petition Date FBPR entered into various loan and security agreements with Debtor and others, as detailed in ¶¶ 13-90 of the Verified Complaint (the "Loan Agreements") whereby FPBR made certain loans and provided certain financial accommodations to Debtor and its related parties.

6. To secure the Debtor's obligations under the Loan Agreements, the Debtor (or its related parties) granted to FBPR, through the Loan Agreements, among other Collateral, a mortgage in various parcels of land including those listed in Debtor's Schedule A Dkt. No. 1 of this case which provided FBPR among other things the right, upon default, to "receive all earnings, income, rents, issues, and proceeds accruing with respect thereto or any part thereof".

---

[2] Verified Complaint ¶94, at 25. The Debtor also guaranteed approximately another $119 million in loans to its related parties. *Id.*

See, paragraph SEVENTH (b), Deed of Mortgage No. 105 dated December 19, 2007, before Notary Michel Rachid Piñeiro, recorded at Folio 59, Volume 1199 of Santurce North, Farm No. 6140, 10th Inscription[3].

7. Upon default, and the filing the Verified Complaint, the right of the mortgagee (here, CPG/GS) to possession of all earnings, income, rents, issues, and proceeds accruing with respect to mortgaged property was became fully and immediately executable and enforceable.

8. Debtor incurred in multiple pre-petition violations of the Loan Agreements, including but not limited to failure to repay the principal amounts[4] upon maturity.

9. On June 9, 2011, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition") and as of that date has been managing its affairs and operating its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. See, Dkt. No. 1.

10. As of May 26, 2011, the outstanding principal balance under the Loan Agreements was not less than $120,262.455.65, plus $7,604,261.30 in accrued and unpaid interest, for a total outstanding balance of principal and interest aggregating not less than $127,866,716.95, of which $8,832,559 principal and over $500,000 interest was then overdue and payable in respect of the GP West Loan Agreement. Verified Complaint ¶94.

11. CPG/GS did not learn of GP West's bankruptcy filing until Friday June 10, 2011. CPG/GS immediately asked the Debtor to assure by stipulation that it would not use Cash Collateral unless ordered by the Court or agreed to by CPG/GS. See communication to Debtor's counsel, and the response of the latter, and the two follow-up communications to

---

[3] True copy of said Deed 105, and the title study as of May 27, 2011 showing its recordation, is attached as Exhibit B.

[4] Except for the loan no. 900155, principal $14,747,824.97 principal and $193,442.24 interest accrued to May 26, 2011. See Verified Complaint ¶94.

Debtor's counsel, true copy of which appears as Exhibit A and Exhbit A-1 hereto. As of the time of filing this emergency Motion, no further communication has been received from either Debtor or its counsel in response to CPG/GS' urgent inquiries.

12. Since the Petition Date, the Debtor has not deposited any payments on accounts receivables or rents in any segregated accounts at CPG/GS.

13. By notice filed in under Docket No. 6 in this case, CPG/GS confirmed that it has not consented to the use of its cash collateral by the Debtor. Yet, CPG/GS has invited Debtor to stipulate to conditional use of Cash Collateral; but at this time, no response has been received, and no agreement has been reached. See Exhibit A hereto.

14. In the circumstances, with no assurance from the Debtor that it will protect the Cash Collateral, CPG/GS is forced to file this motion to prevent use of Cash Collateral without CPG/GS' consent or court authority.

15. Thus, an immediate order by this Honorable Court is necessary to prevent the unauthorized use of Cash Collateral, and enforce Debtor's obligations under Section 363(c)(4) and other authorities.

## Relief Requested and Basis Therein

16. For the reasons stated below, CPG/GS requests that the Court prohibit any use of the Cash Collateral.

**I.    The Court Should Prohibit Any Further Use of Cash Collateral**

    **A.    The Extent of CPG/GS's Cash Collateral**

17. The Cash Collateral constitutes "cash collateral" as defined in 11 U.S.C. § 363(a) of the Bankruptcy Code, which defines "cash collateral" as:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest *and includes the proceeds, products,*

> *offspring, rents, or profits of property ….*
>
> …

11 U.S.C. § 363(a) (emphasis added)

18.     As noted above, CPG/GS has a first priority security interest in the Cash Collateral. The post-petition effect of CPG/GS' security interest is governed by Section 552(b) of the Bankruptcy Code, which states in pertinent part:

> (1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring or profits of such property, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

19.     Thus, CPG/GS has a valid post-petition security interest in all of the rents generated by the Debtor, because they are *proceeds, products, offspring, rents, or profits* of mortgaged property pursuant to 11 USC §552(b)(1). For the same reason, CPG/GS has a security interest in the proceeds generated from the sale (if any) of condominium units by the Debtor. State law determines whether an interest has been perfected in certain collateral and the extent of the security interest. See e.g., Ohio Casualty Group of Insurance Companies v. Professional Management, 130 F.3d 1122 (3d Cir. 1997).

20.     There is no dispute that CPG/GS complied with all requirements of Puerto Rico law relating to perfection of its security interests in rents and other collateral. Further, as noted above, the Loan Agreements provide CPG/GS with a first priority security interest in substantially all of the Debtor's tangible and intangible property, and rents. Accordingly,

CPG/GS clearly has a post-petition security interest in the Cash Collateral, as they are proceeds of other use of the Debtor's property liened to CPG/GS.

### B. The Court Should Prohibit the Use of Any Cash Collateral.

21. Generally, a debtor in possession, after notice and a hearing, may use, sell or lease **property of the estate**. 11 U.S.C. § 363(b). However, pursuant to section 363 of the Bankruptcy Code, a debtor-in-possession may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of that section. 11 U.S.C. § 363(c)(2).

22. CPG/GS has not consented and does not consent to the Debtor's use of its Cash Collateral. CPG/GS has confirmed in its filing under Dkt. No. 6, that it did not consent and does not consent to the use of Cash Collateral and that, accordingly, the Debtor is not authorized to use the same.

23. For the reasons described below, the Court should explicitly prohibit the Debtor's use of the Cash Collateral, as the Debtor has not acknowledged its responsibilities to protect Cash Collateral, nor has provided CPG/GS with adequate protection for such use.

### C. The Debtor Should Not Be Allowed to Use the Post-Petition Cash Collateral.

24. Pursuant to section 363(e), any authorized use of the Cash Collateral must be conditioned upon the Debtor's provision to CPG/GS of adequate protection for its interest in the Cash Collateral.

25. Moreover, the Court should note that Debtor at this early stage has yet to demonstrate a viable exit or reorganization strategy, or for that matter, even file its Statement of Financial Affairs.

26. It is evident that the Cash Collateral will diminish, producing substantial diminution of CPG/GS secured position, and no adequate protection has been offered to offset the diminution in said value. Under these set of factors, the Court should not allow the use of CPG/GS' Cash Collateral.

27. CPG/GS therefore requests that the Debtor be ordered immediately to cease any use of Cash Collateral and to turn over all future Cash Collateral, without prejudice to future agreements with CPG/GS for reasonable use of Cash Collateral under CPG/GS' control.

## II. CPG/GS is Entitled to Adequate Protection of its Cash Collateral and Debtor is Unable to Provide the Same.

28. As described above (and as already requested to Debtor but to no avail) CPG/GS requests that the Court prohibit any use of the Cash Collateral and, in addition to such prohibition, that the Court grant CPG/GS adequate protection on an emergency basis by:

   (a) Directing Debtor to deliver to CPG/GS Cash collateral of CPG/GS that is in the possession, custody or control of the Debtor (or any of Debtor's Insiders of the Debtor as such term is defined in 11 U.S.C. § 101 insofar as such cash collateral is derived from the use of Debtor's property), whether now existing or hereafter created, within the later of: (i) five days; or (ii) five days of receipt.

   (b) Directing Debtor to account for all cash collateral received by or for the benefit of the Debtor since the Petition Date, on a weekly basis starting June 13, 2011.

   (c) Directing Debtor to provide CPG/GS full access, starting no later than June 20, 2011 to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor.)

29. A party with an interest in cash collateral is entitled to adequate protection of that interest pursuant to section 363(e) of the Bankruptcy Code. Section 363(e) states that "the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is

necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 provides examples of adequate protection including: (1) periodic cash payments; (2) additional or replacement liens; and (3) such other relief as will provide the "indubitable equivalent" of the interest. 11 U.S.C. § 361. See also In re Stein, 19 B.R. 458 (Bankr. ED. Pa. 1982) (a court's authority to grant use of cash collateral carries with it a concomitant responsibility to insure that the value of the creditor's security is not impaired and the court may do this by using the non-exclusive terms set forth in 11 U.S.C. § 361).

30. As described above, CPG/GS already has a post-petition security interest in the Debtor's post-petition rents pursuant to 11 USC §552(b)(1).

31. In view of the above, CPG/GS submits that the continued use of cash collateral will serve to increase the deficiency that CPG/GS will bear. It is, therefore, self evident that CPG/GS is not adequately protected from the continued diminution in the value of its collateral.

**Conclusion**

32. The Debtor has no right to use the Cash Collateral, and all such Cash Collateral should be forthwith turned over to CPG/GS. As previously stated, the Cash Collateral is property in which CPG/GS has a security interest. The circumstances described above, including Debtor's lack of acknowledgment of its obligation to protect Cash Collateral, and probable use of Cash Collateral, further underscore CPG/GS' need for an immediate order prohibiting Debtor's use of any Cash Collateral until Debtor acknowledges its obligations, proposes a reasonable budget for use of Cash Collateral, and obtains CPG/GS' consent therefor.

WHEREFORE, CPG/GS respectfully requests entry of an emergency order:

(a) Immediately prohibiting Debtor from using any cash collateral of CPG/GS unless otherwise ordered by this Court, or consented to in writing by CPG/GS; and, upon hearing to be held on expedited basis,

(b) Directing Debtor to deliver to CPG/GS Cash collateral of CPG/GS that

is in the possession, custody or control of the Debtor (or any of Debtor's Insiders of the Debtor as such term is defined in 11 U.S.C. § 101 insofar as such cash collateral is derived from the use of Debtor's property), whether now existing or hereafter created, within the later of: (i) five days from date hereof; or (ii) five days of receipt.

(c) Directing Debtor to account for all cash collateral received by or for the benefit of the Debtor since the Petition Date, on a weekly basis starting June 13, 2011.

(d) Directing Debtor to provide CPG/GS full access, starting no later than June 20, 2011 to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor.)

(e) Providing that nothing herein shall prejudice the opportunity for, and nothing shall obligate any party to make, further stipulations concerning any matter (including but not limited to future use of cash collateral).

The undersigned do hereby certify that we

(A) have carefully examined the matter and concluded that there is a true need for an emergency hearing;

(B) have not created the emergency through any lack of due diligence;

(C) have made a bona fide effort to resolve the matter without a hearing.

NOTICE TO DEBTOR AND OTHER PARTIES IN INTEREST

Within fourteen (14) days after service as evidenced by the certification or such shorter interval as the court may order hereafter, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

We further certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this 13th day of June, 2011.

**O'NEILL & BORGES**
*Attorneys for **CPG/GS PR NPL LLC***
American International Plaza
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel:    (787) 764-8181
Fax:    (787) 753-8944


By:  /s/ Hermann D. Bauer

   Hermann D. Bauer Alvarez
   USDC No. 215205